ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Alfajer, Ltd. | )   ASBCA No. 62125 |
| | ) |
| Under Contract No. W91B4N-18-A-5006 | ) |

APPEARANCE FOR THE APPELLANT:       Walt Pennington, Esq.
                                        Pennington Law Firm
                                        San Diego, CA

APPEARANCES FOR THE GOVERNMENT:   Scott N. Flesch, Esq.
                                         Army Chief Trial Attorney
                                        MAJ James S. Kim, JA
                                        Dana J. Chase, Esq.
                                        Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This appeal pertains to a dispute between the United States Army (the government or the Army) and Alfajer, Ltd (Alfajer or appellant) concerning Blanket Purchase Agreement No. W91B4N-18-A-5006 (the BPA), to provide the lease of Material Handling Equipment (MHE) depending on the requirements set forth in individual performance work statements (PWS). Specifically, the dispute involves Call Order No. W91B4N-19-F-5034 (the call order or the contract) which required appellant to provide specific types of heavy equipment for six months. The government filed a motion for summary judgment which appellant opposed. Because of the terms of the contractual documents and the sovereign act defense, we grant the government's motion for summary judgment.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On August 8, 2018, the government entered into the BPA with appellant (R4, tab 2).

2. The BPA incorporated by reference Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (JAN 2017) (R4, tab 2 at 114).

3. The BPA included DFARS 252.225-7995, CONTRACTOR PERSONNEL PERFORMING IN THE UNITED STATE CENTRAL COMMAND AREA OF

RESPONSIBILITY (DEVIATION 2017-O0004) (SEP 2017). This clause defined "contractors authorized to accompany the force" (CAAF) and non-CAAF contractor personnel:

> Government-furnished support to non-CAAF is typically limited to force protection, emergency medical care, and basic human needs (e.g., bottled water, latrine facilities, security, and food when necessary) *when performing their jobs in the direct vicinity of U.S. Armed Forces*.

(DFARS 252.225-7995(a); R4, tab 2 at 124-25) (emphasis added)

In contrast, the support the government provided to CAAF personnel generally included security on the base, on-base housing, emergency medical and dental care, and travel with United States personnel. The government required all government-provided support for CAAF personnel to be included in a general letter of authorization signed by the contracting officer (CO) and that the CAAF individual was required to carry at all times during a deployment. (DFARS 252.225-7995; R4, tab 2 at 124-26) The clause also stated "[c]ontract performance in USCENTOM AOR may require work in dangerous or austere conditions. Except as otherwise provided in the contract, the Contractor accepts the risks associated with required contract performance in such operations" (DFARS 252.225-7995(b); R4, tab 2 at 125).

The clause allowed the Combatant Commander to provide security for any personnel, CAAF or non-CAAF. For this to occur, the Combatant Commander was required to decide providing such support is in the best interest of the government because "(A) The Contractor cannot obtain effective security services; (B) Effective security services are unavailable at a reasonable cost; or (C) Threat conditions necessitate security through military means" (DFARS 252.225-7995(c)(1)(i); R4, tab 2 at 125). If the Combatant Commander made such a determination, "the Combatant Commander may provide security through military means, commensurate with the level of security provided DoD civilians." (DFARS 252.225-7995(c)(1)(ii); R4, tab 2 at 125)

4. The BPA included DFARS 252.225-7997, CONTRACTOR DEMOBILIZATION (DEVIATION 2013-O00017) (AUG 2013). This did not establish any specific timeframe for demobilization. Instead, it required appellant to submit a demobilization plan 120 calendar days prior to the end of the contract. (R4, tab 2 at 131-32) However, because the contract was both of short duration and was modified to reduce work and deobligate funds, there was not enough time for the submission of a demobilization plan 120 days before contract expiration. The call order did not address demobilization at all (R4, tab 4).

5.  On December 3, 2018, the government issued the call order to appellant whereby appellant agreed to provide material handling equipment to Forward Operating Base (FOB) Thompson, Afghanistan, for six months (R4, tab 4).  The call order incorporated all of the clauses and terms and conditions of the BPA (*id.* at 000160).  The PWS of the call order included language about security requirements, stating, "[t]he Contractor is required to provide his own security to escort all the MHE upon the initial delivery to [FOB] Thompson, and the final retrieval of the MHE from [FOB] Thompson upon contract completion/expiration" (R4, tab 4a at 000171).

6.  On December 15, 2018, Alfajer's personnel attempted to deliver equipment pursuant to the call order.  While en route, the Taliban confiscated a forklift and kidnapped the driver of a transportation company appellant hired.  Alfajer asked the government to allow additional time for mobilization.  The government approved the request.  The equipment was delivered in January 2019.  Appellant was granted approximately 40 days to deliver the equipment.  (App. resp. at 5, 12; gov't mot. at 6)

7.  On January 29, 2019, the government directed appellant to remove some of its equipment by February 1, 2019, and the remainder by February 4, 2019 (R4, tab 8 at 204).  The government required this date because it anticipated that the base would be completely closed and evacuated by February 6, 2019 (gov't mot. at 8-9, ex. G-6 ¶¶ 4-5 (Affidavit of MAJ Matthew Boise)).

8.  Appellant removed all equipment by February 7, 2019 (R4, tab 10 at 211-212).

9.  Appellant used a third-party transportation company to remove the equipment from FOB Thompson in three convoys.  The first one arrived safely in Herat.  The second one was hijacked in Kanisk.  The third one was moved to a secure location in Farah; however, appellant is no longer able to contact the individual who knew where the equipment was stored.  (Gov't mot. at 9; app. SOF at 16)

10.  Appellant's employees were not granted CAAF status and were, instead, considered "non-CAAF" (gov't mot., ex. G-2 ¶ 3 (Declaration of Benjamin Wells); app. SOF at 2 (undisputed)).

11.  Appellant did not request to carry arms (gov't mot. at 5; app. SOF at 5).

12.  Appellant was aware that hijackings were common in Afghanistan according to sworn testimony provided at a deposition by Alfajer's President and owner (gov't mot., ex. G-1 at 24-25, 29).  Appellant was aware of which areas were safe based upon reports from other local nationals (gov't mot., ex. G-3 at 23-26 (Deposition of an Alfajer employee)).  Appellant was aware of security concerns since 2012 that had gotten worse in 2018 (gov't mot., ex. G-1 at 31).  Appellant was aware

that all of Afghanistan was dangerous and admitted, "[y]ou can't work in Afghanistan unless you accept risk" (gov't mot., ex. G-1 at 141-42).* Accordingly, it is undisputed that appellant knew security was an issue in Afghanistan at the time of the BPA solicitation, BPA award, and the call order execution.

13. Appellant requested that the government "at least keep the contract for 45 more days" so that the government could "use the MHE as [it] wish[ed] and [appellant could] be reimbursed for [its] costs" (R4, tab 9 at 206). In the alternative, appellant requested "a couple of weeks" to remove the equipment because removing such a large amount of vehicles "can draw a lot of security issues" (id.). The government asserted and appellant did not dispute that appellant never requested government-furnished security (gov't mot., ex. G-1, at 38, 83; see also app. SOF ¶ 4 (disputing fact 7 but stating that appellant requested additional days to demobilize rather than disputing that appellant failed to request government-furnished security)). It is undisputed that appellant requested additional days to demobilize but did not at any time during performance of the call order request that the government provide government-furnished security.

14. It is undisputed that the Combatant Commander did not receive a request for government-furnished security and thus did not analyze or determine that appellant required such security (gov't mot. at 4; app. SOF at 3).

15. On February 26, 2019, the parties executed a bilateral contract modification that covered a number of items. First, it changed CLINs 0001 through CLINs 0010 to decrease the time to demonstrate the time the items had been leased and updated the delivery schedule for those line items. Second, it deobligated CLIN 0011. Third, it added CLIN 0012 to pay demobilization costs in the amount of $160,002. Finally, it deobligated the remaining unused funds. (R4, tab 15 at 245-47) No release of claims was included in the modification.

16. On February 12, 2019, appellant filed a claim with the CO for the theft of the equipment (R4, tab 18 at 290-91). On April 8, 2019, the CO signed the Contracting Officer Final Decision denying the claim (R4, tab 19). On May 23, 2019,

---

* Appellant's counsel technically stated that it disputed the admission of knowledge of security problems and complains in its statement of facts that he could not find the references in the government's exhibits. However, the Board found the cited material with ease. Regarding the three volumes of exhibit G-1, the pages are numbered sequentially for all three volumes, starting after the end of the numbers for the prior volume. For both exhibits G-1 and G-3, the government provides pinpoint citations. It is unclear to the Board what more appellant thought the government was required to do to make the citation clearer or more appropriate.

the final claim determination was emailed to appellant which appellant acknowledged on May 30, 2019 (R4, tab 20). On July 5, 2019, appellant filed an appeal with the Board and it was docketed as ASBCA No. 62125.

17. Appellant's appeal lists four counts: I) breach of contract; II) breach of the implied covenant of good faith and fair dealing; III) superior knowledge doctrine; and IV) *quantum valebant* (compl. at 4-8). The government previously moved to dismiss Count IV for lack of jurisdiction, which the Board granted. *Alfajer, Ltd.*, ASBCA No. 62125, 20-1 BCA ¶ 37,660.

18. In its complaint, appellant alleged that there was an implied duty of good faith on the part of the government to provide safe passage for Alfajer and that the government was required to protect people and keep them from getting kidnapped (compl. at 6).

19. The parties completed briefing on the government's motion for summary judgment. In its response, appellant solely addressed its assertion that the government failed to perform its implied duty of good faith and fair dealing, or Count II of its complaint. Appellant failed to respond to any of the government's arguments for Counts I and III of appellant's complaint. Appellant also failed to respond to the government's argument that the act of closing the base was a sovereign act. We consider appellant's failure to address Counts I and III as abandoning them.

## THE PARTIES' POSITIONS

In its motion, the government requests summary judgment for three reasons and requests the Board deny Counts I through III of appellant's complaint, thereby disposing of the counts remaining in the subject appeals. First, the government argues that the order to close FOB Thompson was a sovereign act that precluded recovery for appellant. Second, the government argues that appellant's lost property due to the lack of security was a risk appellant assumed when it accepted the contract. Third, the government argues the terms of the BPA and call order do not provide any entitlement for appellant to recover. (Gov't mot. at 1-2)

In its brief response, appellant broadly alleges there are genuine issues of material fact, without citing to the record to demonstrate those issues, and argues the government breached its implied contractual duties of good faith and fair dealing (app. resp. at 7). Appellant applies great weight to the fact that Alfajer was granted approximately 40 days to mobilize in determining the appropriate amount of time to demobilize (*id.* at 12) (stating "[s]ince it was the [g]overnment that changed and raised the risk by decreasing the transport time from 40 days to less than three, it should have been the [g]overnment that made the offer to provide security.").

5

In its reply, the government argued that appellant failed to dispute the government's defenses or abandoned most of appellant's own posited claims. Specifically, "appellant provided some commentary relevant to the assumption of risk defense" but that "it utterly and completely avoids—and failed to respond to—the fact that the government's order to depart the contract site was based on a sovereign act— closure of the base." (Gov't reply at 1) Thus, the government concluded that appellant did not dispute the government's defense. Further, the government argues that the criminal acts of another party were the proximate cause of the loss, not any actions by the government, which is particularly important when appellant did not dispute the sovereign act defense (*id.* at 1-2). Finally, the government argues that appellant only addressed its claim that the government breached its implied contractual duties of good faith and fair dealing, abandoning all other claims (*id.* at 2).

## DECISION

### 1. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record and pleadings demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citing FED. R. CIV. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Chugach Fed. Solutions, Inc.*, ASBCA No. 61320, 20-1 BCA ¶ 37,617 at 182,594 (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)). To defeat a motion for summary judgment, a non-moving party must set forth sufficient facts to demonstrate that a genuine issue of material fact exists. *AXXON Int'l, LLC*, ASBCA No. 61224 *et al.*, 20-1 BCA ¶ 37,489 at 182,144 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993). When considering motions for summary judgment, the evidence produced by the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Europe Asia Constr. Logistic*, ASBCA No. 61553, 19-1 BCA ¶ 37,267 at 181,351 (citing *American Boys Constr. Co.*, ASBCA No. 61163, 18-1 BCA ¶ 36,949 at 180,051).

While we must believe the evidence produced by the non-moving party and draw inferences in its favor, "the non-moving party responding to a motion for summary judgment *must* oppose the motion with citations to *record evidence sufficient to establish that there is a dispute regarding a material factual issue*—that is, a fact

essential to proving or disproving a claim." *Odyssey Int'l, Inc.*, ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,071 (citations omitted, emphasis in original). "Conclusory statements and mere denials are not sufficient to ward off summary judgment." *Cellular Materials Int'l, Inc.*, ASBCA No. 61408, 22-1 BCA ¶ 38,022 at 184,646 (citing *Mingus*, 812 F.2d 1387 at 1390-91 (Fed. Cir. 1987)). Further, allegations or mere statements by the non-moving party are insufficient. Instead, "the non-moving party must cite *record evidence* demonstrating that there is a basis in the record to support the factual finding." *Odyssey Int'l*, 21-1 BCA ¶ 37,902 at 184,071. Further, this record evidence must be enough to support entry in favor of the non-moving party. *Id.* (Citing *Liberty Lobby*, 477 U.S. at 252).

### 2. APPELLANT FAILED TO PRODUCE EVIDENCE OF GENUINE ISSUES OF MATERIAL FACT

To prevail, appellant must provide record evidence that there is a dispute regarding a material fact, which it has failed to accomplish. Here, except for appellant's argument that the government breached its implied contractual duties of good faith and fair dealing, appellant failed to even address any of its own claims, much less the other arguments the government raised in its motion for summary judgment.

While failing to address any of the government's arguments, appellant failed to cite to the record with any evidence of a dispute. In the handful of instances where appellant stated that a fact was disputed, it responded with mere argument without citation to the record, entirely irrelevant facts, or unrelated facts. For example, for government fact no. 10, where the government stated a clause existed in the BPA concerning carrying weapons and what the BPA required to do so as well as an explanation of how the process worked, appellant responded disputed. However, appellant cited to a question and answer in a deposition that did not dispute the cited fact, and instead was a quoted exchange of an ambiguous question, at best, and the deponent's answer. The question as quoted by appellant was, "Are you saying that, no, you're not familiar with any request, or yes, your familiar with the requests [for weapons] and none were granted [sic]?" The deponent answered "that is no to both" as described by appellant. Appellant concluded by stating, "[i]mplied duties not to interfere with the benefits of the contract are not superseded by express contract terms." (App. SOF at 5) Appellant did not actually dispute the fact the government presented, which was that the BPA included a clause and the process for that clause. Instead, the fact that appellant cited to dispute the government's fact, that the deponent was not familiar with any requests made to the CENTCOM Commander, was not relevant to the fact that the clause and process existed. Further, appellant's statement about implied duties, which appellant peppered throughout its "disputed" facts (*see* app. SOF at fact nos. 2-3, 9-10, 28), was not relevant to the government's fact and was

7

a mere statement by appellant. Appellant's response to fact 10 is one of many examples that demonstrate appellant's failure to identify material facts in dispute.

Further, appellant frequently stated one of the government's facts was disputed simply because appellant could not find the page in the evidence; however, the Board had no issues finding the information as cited by the government. Rather than being disputed, these were appellant's apparent misunderstanding of the evidence or inability to understand the page numbering. (*See* app. SOF at 7-8, 11)

The few facts appellant listed as disputed facts after responding to the government's facts were simply a handful of quotes from three deponents regarding the number of days the government gave appellant to move equipment (app. SOF at 20-24). The handful of quotes mostly concerned the amount of time it took to mobilize and provided detailed how demobilization occurred. Specifically, the comments concerned appellant's request for additional time to remove equipment and statements about the base closure and reopening (*id.*). Other comments included that Alfajer believed the Taliban took its equipment and that appellant could not reach one of its managers (*id.*). Appellant stated that it could have quoted security if it chose to do so but did not (*id.*). Finally, appellant noted that the government admitted it was trying to keep Alfajer employees safe (*id.*). None of these facts dispute anything the government cited as its facts. Nor does the government dispute these facts. Instead, appellant's cited facts are actually consistent with what the government cited in its motion. Put simply, appellant failed to demonstrate any genuine issues of material fact.

### 3. THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE APPELLANT ABANDONED COUNT I OF ITS COMPLAINT AND DID NOT RESPOND TO THE GOVERNMENT'S SOVEREIGN ACT DEFENSE

Similarly, except for the implied duty of good faith and fair dealing argument, appellant did not respond to anything in the government's motion. Appellant certainly did not respond to the sovereign act defense or the government's argument that the actual terms of the BPA and contract did not allow for recovery of the stolen equipment. Instead, appellant concentrated solely on what it perceived as the government's breach of its implied contractual duty of good faith and fair dealing. Appellant also completely abandoned its claim that the government had superior knowledge.

In Count I, appellant alleged breach of contract. In its motion, the government asserted that the closure of the base was a sovereign act that made performance of the contract impossible. This necessitated the modification reducing the period of performance and deobligating funds in the call order and the government argued that

8

appellant failed to establish that the government breached the contract (gov't mot. at 13-17). We agree that appellant failed to establish that the government breached the contract because it failed to address the express terms of the contract in its motion briefing, instead focusing on the implied duty of good faith and fair dealing.

Further, appellant failed to respond to the government's argument that the sovereign act precludes appellant from recovery; thus, we review whether the government is entitled to summary judgment as a matter of law based on the undisputed facts cited. "The sovereign acts doctrine provides that 'the United States when sued as a contractor cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign.'" *Conner Bros. Constr. Co., v. Geren*, 550 F.3d 1368, 1371 (Fed. Cir. 2008) (quoting *Horowitz v. United States*, 267 U.S. 458, 461 (1925)). When the government's actions are "relatively free of Government self-interest," the sovereign acts defense is available. *Id.* at 1373 (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996)). "In contrast, the sovereign acts defense is unavailable 'where a substantial part of the impact of the Government's action rendering performance impossible falls on its own contractual obligations.'" *Id.* (quoting *Winstar*, 518 U.S. at 898). Further, the Board must consider whether the sovereign act "is exclusively directed to aborting performance of government contracts" and in so deciding, "courts addressing the sovereign acts doctrine have looked to the extent to which the government action was directed to relieving the government of its contractual obligations." *Id.* at 1374.

Here, the government's actions were to close the FOB and evacuate it (SOF ¶7). The actions were not directed at the government's self-interest to relieve itself of any contractual obligations but instead were a matter of security that was public and general to all contractors doing business with the FOB. The act of closing and evacuating the base was relatively free of government self-interest. All personnel were ordered to evacuate, rendering it impossible for the government to do business with any contractors. (*Id.*) Thus, the sovereign act defense is available to the government and bars recovery for appellant.

Based on the above, appellant abandoned Count I, without providing a scintilla of evidence to dispute the facts the government asserted. Further, the government's decision to close and evacuate the base was a sovereign act. Thus, the government is entitled to judgment as a matter of law and we grant the government's motion for summary judgment regarding Count I.

### 4. *APPELLANT ABANDONED COUNT III AND FAILED TO RESPOND TO THE GOVERNMENT'S ARGUMENTS CONCERNING THE COUNT*

In Count III, appellant alleged the government had an advantage because of the superior knowledge that the area of contract performance was unsafe. While the

government responded to this count in its answer and in the motion for summary judgment, appellant failed to respond in any way to the government's arguments.

Even if we read any comments in appellant's response to the government's statement of facts as indirectly responding to the government's arguments regarding superior knowledge, appellant clearly knew the extent of the security risks in the area. Appellant had first-hand knowledge that the heavy equipment was at risk of theft in the area before it bid on the contract (SOF ¶ 12). Further, the direct terms of the contract required the contractor to be responsible for providing its own security (SOF ¶¶ 3, 5).

Based on the above, appellant abandoned count III, without providing a scintilla of evidence to dispute the facts the government asserted. Thus, the government is entitled to judgment as a matter of law and we grant the government's motion for summary judgment regarding Count III.

5. *IMPLIED CONTRACTUAL DUTIES OF GOOD FAITH AND FAIR DEALING*

The only portion of the government's motion for summary judgment that appellant responded to involved count II of its complaint, that the government breached its implied duty of good faith and fair dealing. Appellant did not demonstrate any genuine issues of material fact so we look to the application of the law to the facts to determine the outcome and whether the government is entitled to judgment as a matter of law. Here, appellant seemed to misunderstand the implied duty of good faith and fair dealing and attempted to assert that implied duties supersede the express requirements of the contract.

As an initial point, Count II is problematic because of our decision that the sovereign act of closing the FOB bars recovery. However, we review whether appellant's appeal and arguments regarding the implied duty of good faith and fair dealing leave any room to allow recovery for appellant.

As appellant pointed out, the covenant of good faith and fair dealing is an implied duty that "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (citations omitted); *see also Smart Way Transp. Servs.*, ASBCA No. 60315, 16-1 BCA ¶ 36,569 at 178,112. However, appellant misunderstood that the covenant of good faith and fair dealing does not expand express terms of a contract when those terms exist. *See Centex*, 395 F.3d at 1306 (explaining that the plaintiff in *Centex* was not expanding the express terms of the contract but, instead, enjoying "the benefits contemplated by the contract").

10

The implied duty of good faith and fair dealing cannot somehow create duties that are inconsistent with the terms of the contract. *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014). Appellant demonstrated it failed to understand this concept early in its statement of genuine issues of material fact when it responded to the government's simple statements concerning clauses included in the BPA by stating, "[d]isputed that this express term changes the Government's implied duties to appropriate the other parties' benefits under the contract for itself" (app. SOF at 1-2, fact nos. 2-3). Appellant seems to be attempting to argue that implied duties exist that are superior to the express terms of the contract, thereby nullifying the express terms of the contract. Unfortunately, regardless of the amount of incredulousness appellant forced into its brief and statement of facts, implied duties do not change the express terms of the contract.

Appellant further cites *Bell/Heery*, 739 F.3d at 1335, by including the quote, "this implied covenant guarantees that the government will not eliminate or rescind contractual benefits through action that is specifically designed to reappropriate the benefits and thereby abrogate the government's obligations under the contract" (app. resp. at 9). However, appellant failed to demonstrate how this quote was relevant to its case. It is actually unclear what benefit appellant alleges the government received or how it reappropriated benefits.

Instead, appellant seems fixated on the fact that the government approved Alfajer's request for additional time to mobilize—a request that occurred *after* award of the BPA, *after* appellant had agreed to the terms of the contract, and *after* appellant began performance of the contract—but then did not provide the same amount of time to demobilize. Appellant's argument seems to include only that it should have had at least 40 days to demobilize because it had that amount of time to mobilize (app. resp. at 10). However, the government allowing a relaxation of the contract terms to accommodate Alfajer during mobilization does not mean that all other contract terms are disregarded. It simply means that the government was sympathetic to appellant's predicament and allowed a relaxation of the terms at a time when the mission could afford such a delay. This was not the case after the termination because the base was closed and quickly evacuated.

Appellant requests the government pay for the lost leased equipment under a theory of an implied duty of good faith and fair dealing because the conditions were unsafe and the government allowed extra time for the company to mobilize, after the start of the contract and the call order, regardless of the express terms of the contract. Appellant even suggested that the government was responsible for providing safe access and that it was the government's responsibility to protect them from kidnapping (SOF ¶ 17). However, the express terms of the BPA and contract dispute appellant's position. Further, the express terms of the contract allowed ways appellant could have requested additional security, but those avenues were not explored.

11

Several express terms of the BPA and contract are relevant to this appeal and defeat appellant's argument concerning the implied duty of good faith and fair dealing. First and perhaps most relevant, in direct opposition to appellant's argument that the government was required to provide security to Alfajer, the express terms of the contract required appellant to provide its own security for both delivery and retrieval of the equipment (SOF ¶ 5).

Second, while appellant argued that it was the government's duty to provide security for mobilization and demobilization, the BPA provided express terms for requesting government-provided security that included making particular requests for said security. Appellant never made such a request, not at the beginning of the contract when it encountered difficulties beginning performance of the contract nor at the end when it was ordered to remove the equipment (SOF ¶¶ 3, 13). Instead, appellant asked for additional time to remove the equipment, which the government could not approve based on the sovereign act decision to close and evacuate the FOB (SOF ¶ 7).

Third, the BPA expressly addressed that performance of the contract might be unsafe (SOF ¶ 3). In addition to agreeing to the terms of the BPA and contract, appellant acknowledged several times that the conditions were not safe (SOF ¶¶ 9, 12-13).

Finally, the BPA clearly categorized employees working on appellant's contract as non-CAAF, which provided government-furnished support, including security, only when performing their jobs in the direct vicinity of US Armed Forces (SOF ¶¶ 3, 10). Once the equipment left the base, the government was no longer responsible for furnishing anything for non-CAAF personnel working pursuant to the contract.

The Board can find no evidence that the government interfered with appellant's performance of the express terms of the contract, which did not dictate how appellant should remove the leased equipment. While the BPA contained some limited information about a demobilization plan, it was impossible for the demobilization portions of the contract to be followed because the contract was reduced in scope and deobligated early and appellant never filed a demobilization plan of any sort (*see* SOF ¶ 4). Thus, the government never approved a demobilization plan. While objecting to the demobilization timeline, appellant developed the plan of how to remove the equipment and chose to use a third-party transportation company for demobilization (SOF ¶ 9). That third party lost the equipment, not the government (*id.*). The only aspect for which the government was responsible was the date it requested the equipment be removed because the act of closing and evacuating the FOB required the termination of all contracts and quick removal of all portions of the contracts.

12

The express terms of the contract put security for mobilization and demobilization squarely on the shoulders of Alfajer. The government permitted additional time for mobilization but that did not create a duty, whether express or implied, for it to provide the same amount of time for demobilization. The government did not dictate how appellant had to remove the equipment, just that it needed to be removed because the FOB was closing and evacuating. Finally, at no time did appellant request the government provide security or make a formal request through the channels expressly contained in the contract. The government did not violate the implied duty of good faith and fair dealing because the express terms of the contract dictated which party was responsible for security of the equipment while transporting it to and from the base—the contractor.

For these reasons, we grant the government's motion for summary judgment regarding Count II.

<u>CONCLUSION</u>

For the reasons stated above, we grant the government's motion for summary judgment for Counts I, II, and III. Count IV was previously denied. Thus, the appeal is denied and no further counts of the appeal remain under consideration at the Board.

Dated: October 20, 2023

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62125, Appeal of Alfajer, Ltd., rendered in conformance with the Board's Charter.

Dated:  October 23, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals